OPINION OF THE COURT
John Carey, J.
FACTUAL BACKGROUND
In March 1992, at her initial appearance before a Parole Board, petitioner (who is incarcerated for an indeterminate sentence of from two to six years, upon a conviction for manslaughter in the first degree, for causing the 1990 death of a newborn child) spoke haltingly in response to the Board’s very first question. The transcript reflects that she said: "March 1990 and I was — I remember before this happened and I was like — anytime I go to school and I go to school and I can’t go to school. I was.”
The transcript shows that, following the above-quoted garbled attempt by petitioner to answer a question as to whether she remembered having caused the child’s death, the following exchange took place among petitioner and the two parole commissioners present at the hearing:
"Parole Commissioner Treen: I’m not understanding everything you are saying. Speak a little slower. You are from Haiti, right?
"The Inmate: You don’t have any interpreter?
"Parole Commissioner Umina: I think we may need one. What kind of interpreter, French?
"The Inmate: French.
"Commissioner Treen: Do you speak Spanish, also?
"The Inmate: I understand Spanish, too.
"Commissioner Treen: Well?
"The Inmate: Not very well, but I can understand Spanish.
"Commissioner Treen: I understand your English pretty well now. Have you understood everything we have said to you?
"The Inmate: Yes, I understand what you said. You don’t understand my accent.
"Commissioner Umina: I think we should hold this for an interpreter. Ask Mr. White to come in.
"Commissioner Treen: We will see if we can do it in Spanish. Which is better for you, Spanish or English?
*534 "The Inmate: French is better. If I can explain it slowly—
"Commissioner Umina: We will ask Mr. White to make the determination. For the record, we are going to try a Spanish-speaking interpreter. The subject speaks French, a little Spanish, and some English.”
Toward the end of the 12-minute proceeding, in response to a question about her difficulties in explaining to others at Bedford Hills Correctional Facility the circumstances of the instant offense (prior to which she had no felony convictions), petitioner asserted that "they didn’t have the ability to understand what I say.” Commissioner Treen replied, "French is better for you, a French interpreter,” to which petitioner rejoined, "Yeah.” At the conclusion of the proceeding (during which the commissioners asked questions about the baby’s death, petitioner’s mental illness, the medical treatment she had received subsequent to causing the baby’s death, and the two rapes of which she had been a victim prior to her offense), the Board denied release on various arguably appropriate grounds, finding unlikelihood that petitioner would "live and remain at liberty without violating the law.” The Board also recommended counseling.
Petitioner took an administrative appeal from the denial, based almost entirely on her contention that her rights were violated by the Board’s failure to provide a French interpreter for the hearing. By decision dated December 14, 1992, the Appeals Unit of the Board of Parole recommended affirmance, addressing itself largely to the interpreter issue. An appellate panel of the Board of Parole affirmed the denial in a decision received by petitioner’s counsel on January 19, 1993. This CPLR article 78 proceeding ensued, commencing with an order to show cause (dated Jan. 25, 1993) returnable March 5, 1993.
DISCUSSION
Executive Law § 259-c (5) provides: "The state board of parole shall * * * through its members, officers and employees, study or cause to be studied the inmates confined in institutions over which the board has jurisdiction, so as to determine their ultimate fitness to be paroled.” Section 259-i (2) (a) provides that "a member or members as determined by the rules of the board shall personally interview an inmate * * * and determine whether [she] should be paroled.” In regulations promulgated to effectuate the statute, it is pro *535 vided that "[e]ach inmate shall be scheduled for a parole release interview” and that "[t]he parole release interview shall be conducted by a panel of at least two members of the Board of Parole.” (9 NYCRR 8002.2 [a], [b].) The questions on which this case turns are whether the Board of Parole caused petitioner to be properly "studied” and (as a corollary) whether the Board conducted an appropriate "interview” of petitioner.
The court knows of no reported case addressing a fact pattern similar to that presented here. Parole release proceedings in New York are not subject to due process requirements because no "liberty interest,” of the sort that triggers "due-process” analysis, is at stake. (See, Greenholtz v Nebraska Penal Inmates, 442 US 1 [1979].)* However, those governmental officials who administer the parole system are expected to abide by precepts of fundamental fairness. Thus, in Matter of Torres v Hammock (105 Misc 2d 1073 [Sup Ct, Washington County 1980]), the court adjudicated the question of whether failure to provide an interpreter for a parole-release interview denied a prisoner "a fair hearing.” The hearing there was adjudged to have been "fair” because the minutes "clearly” illustrated that the prisoner "understood the questions and had no difficulty in answering them.” (Supra, at 1074.) Likewise, the Court in People ex rel. Haderxhanji v New York State Bd. of Parole (97 AD2d 368, 369 [1st Dept 1983]) reversed a requirement that an inmate receive a new parole-release hearing with an Albanian interpreter where "the record disclose[d] that petitioner understood and responded to the commissioner’s questions and comments.” And in Solari v Vincent (77 Misc 2d 54 [Sup Ct, Dutchess County 1974], affd 46 AD2d 453 [2d Dept 1975], revd as moot 38 NY2d 835 [1976]), the court remitted a parole matter for a new hearing *536 because the Parole Board had failed to set forth reasons for the denial of parole. There, the inmate had requested an interpreter at his initial hearing, but the request had been denied. The court directed provision of an interpreter at the rehearing, stating (77 Misc 2d, at 57): "There does not appear to be any justification for the denial of an interpreter since petitioner is a Chilean citizen, whose English is limited and a Spanish speaking interpreter should be furnished him upon a parole release hearing so that petitioner fully understands questions posed to him by the board and makes himself understood in responding to any question.”
In an analogous Federal proceeding, Judge Haight ruled that an illegal alien from the former Yugoslavia had not been prejudiced by the Immigration and Naturalization Service’s failure to utilize an Albanian interpreter either in interviewing her at the port of attempted entry or in conjunction with her request for parole release pending adjudication of her request for asylum. (Micovic v McElroy, 790 F Supp 75, 76-77 [SD NY 1992].) The alien petitioner had been interviewed at the airport in the "Serbo-Croatian” (sic) language, which she asserted to be a language she "spoke,” but not the language that she "truly understood].” (Supra, at 76.) Parole had been denied at the administrative level on the ground that, regardless of what the applicant said in her own behalf through the Serbo-Croatian interpreter, or could have said through an Albanian interpreter, she "did not fall within the regulatory criteria for granting parole to aliens arriving with false documentation. See 8 C.F.R. §§ 235.3(b); 212.5(a).” (Supra, at 75.) The court concluded that the alien petitioner had not carried her burden, which the court characterized as one of showing that the administrative agency had "acted irrationally or in bad faith” (supra, at 76), because factual matters underlying the parole-denial decision (such as the falsity of a "green card” carried by petitioner) could not have been "affected in any way by the language in which the pre-detention interview was conducted, or petitioner’s relative degrees of comprehension between Albanian and Serbo-Croation.” (Supra, at 77.) Judge Haight noted, however, that the alien was scheduled for a political-asylum hearing before an Immigration Judge, and stated (in dictum): "[presumably at the hearing before the Immigration Judge steps will be taken to ensure the attendance of an interpreter able to guarantee petitioner’s comprehension of what is said to her and the Immigration Judge’s *537 comprehension of what she says at the hearing.” (Supra, at 77.)
Turning to the affirmance of the denial of petitioner’s application for release on parole, the Appeals Board of the Parole Board could only have issued its affirmance "on the basis of the written record.” (9 NYCRR 8006.2 [c].) Upon its review, the Appeals Board was entitled to consider "whether the proceeding * * * was in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious or was otherwise unlawful” (id., 8006.3 [a] [1]), and the court presumes that this compound question, explicitly raised in petitioner’s administrative appeal, was indeed considered. That question should have been resolved in favor of petitioner if the "interview” of petitioner was not conducted by "two members” (9 NYCRR 8002.2 [b]), or if the interview conducted was not "fair” (Matter of Torres v Hammock, 105 Misc 2d 1073, supra).
As a legal standard by which to measure the question of "fairness,” respondent is entitled to deem a hearing conducted entirely in English to be "fair” only where the parole applicant demonstrably understood clearly the questions and comments directed to her, in English, during the course of the hearing, and where the parole applicant further demonstrably gave responses, in English, that adequately addressed the subject matter presented to her and that were understood by the members of the Parole Board who conducted the interview. (Accord, People ex rel. Haderxhanji v New York State Bd. of Parole, 97 AB2d 368, supra; Solari v Vincent, 77 Misc 2d 54, supra.) (In a situation where a parole applicant, whom the interviewers believe to be fully fluent in English, stubbornly refuses to communicate with the interviewers — in English or at all — an interpreter could be denied if appropriate facts were contemporaneously placed on the record by the interviewers.) Further, where a choice was made by the interviewers as to the language (other than English) that a parole applicant was required to speak, and in which she was addressed, at an interview, respondent is entitled to deem a hearing to be "fair” only where the choice of language (i.e., of interpreter) was made rationally. Unless interpreters in a language preferred by the parole applicant are demonstrably unavailable or nonexistent (as would pertain if the preferred dialect were extremely rare), a decision to utilize a non-English language other than that preferred by the applicant is irrational if, as a result of the applicant’s relative degrees of *538 fluency and/or of comprehension, the decision to utilize this third language could have affected the outcome of the proceeding to the detriment of the applicant. (See, Micovic v McElroy, 790 F Supp 75, supra.)
The decision below to accept the recommendation of the Appeals Unit (that the parole-denial be affirmed) was accordingly affected by an error of law, and therefore cannot be permitted to stand. Petitioner’s opportunity for parole release rested upon the hearing panel’s ability to determine whether she could "live and remain at liberty without violating the law.” (9 NYCRR 8002.1 [b].) In making that determination, and the companion determination of petitioner’s "ultimate fitness to be paroled” (id., 8000.1 [b] [5]), the panel needed to explore various questions relating to the instant offense (petitioner’s first and only felony). Those questions involved areas of great sensitivity and complexity: the death of a newborn child, petitioner’s reaction to multiple rapes, and petitioner’s preexisting psychological difficulties. The panel indeed raised these questions. However, petitioner’s ability to understand these questions was reduced by the fact that they were put to her in Spanish, a language she understands, but "not very well.” Her ability to respond to the questions suffered because she had to phrase her answers in Spanish, a language which Commissioner Umina stated petitioner is capable of speaking "a little.” It can hardly be questioned that an individual utilizing a language which she understands "not very well” and speaks "a little” will be far more hesitant to explain sensitive and intimate matters to a perceived authority figure than the same individual would be if she utilized a more preferred language; indeed, the transcript before the court is replete with tentative, imprecise answers to the panel’s questions. Because the interview was a key aspect of the parole process in petitioner’s case (which the panel’s formal findings cited, and indeed quoted from, regarding petitioner’s "lack of insight”), a substantial decrease in her capacity to be successfully interviewed (caused by the absence of an adequate interpreter) undoubtedly detrimentally affected her chances for parole release.
There were no grounds on the record, which was all that the Board of Appeals could consider (9 NYCRR 8006.2 [c]), for the panel’s choice of a Spanish interpreter. The record reflects that the panel assumed petitioner is from Haiti; the court takes judicial notice that Haitian immigrants normally arrive here speaking Creole and possibly French. Petitioner re *539 quested an interpreter, and informed the panel more than once on the record of her preference for French over Spanish. The record contains no basis for the panel to believe that petitioner was proficient in Spanish, or even that she was proficient in French as distinguished from Creole.
No indication is given as to who "Mr. White” was, what his qualifications were "to make the determination” of the language to be used, or the articulable basis on which he reached that determination. The court infers from the record — but is unable to conclude — that Mr. White, a Spanish interpreter, was immediately available. If that was why the panel decided to conduct the hearing in Spanish, then that decision was arbitrary and capricious.
Given that the record does not support the panel’s decision to utilize a Spanish interpreter, the hearing was not "fair,” and cannot properly be termed an "interview” (Executive Law § 259-i [2] [a]; 9 NYCRR 8002.2), in that the word implies reciprocity — something conducted between or among people able to communicate freely with each other. If petitioner was not accorded an "interview,” the Board of Appeals was not privileged to accede in a decision denying her application for parole release. (9 NYCRR 8006.3 [a].)
The Appeals Unit of the Board of Parole, in recommending affirmance, noted that Commissioner Treen, during the hearing, said she could understand petitioner’s English. It noted further that petitioner was capable of understanding English. These observations are both borne out by the record, but they do not justify denial of a Creole or French interpreter, for the ability of Commissioner Treen to understand petitioner’s English meant nothing if Commissioner Umina was not also, of record, comfortable with his own ability to understand petitioner’s English. A conversation with Commissioner Treen alone would not meet the regulatory requirement of an "interview” conducted by two members of the Board of Parole. (9 NYCRR 8002.2 [b].) The second member, Commissioner Umina, never asserted his ability to understand petitioner’s English; in fact, he alerted his colleague more than once to the possibility that an interpreter was needed. Besides, Commissioner Treen’s statements later in the hearing do not post hoc justify the earlier decision to utilize the services of a Spanish interpreter, a decision for which there had never been justification on the record.
The Appeals Unit recommended that the Board of Appeals *540 affirm denial in this case. The Board of Appeals was empowered "to affirm, modify or reverse the decision” of the panel (9 NYCRR 8006.4 [e]), and was required to provide reasons for a decision at variance with the recommended result. (Id., 8006.4 [g].) Further, a reversal or modification on appeal must be accompanied by a direction of "the action to be taken.” (Id., 8006.4 [h].) For the reasons explained above, affirmance here was not warranted. Accordingly, the petition is granted to the extent that it is now,
Ordered, that the decision (of respondent and/or his designees) to affirm the denial of petitioner’s application for parole release is hereby vacated and annulled; and that it is further
Ordered, that respondent shall forthwith render a decision modifying that denial for the reasons set forth in this opinion; and that it is further
Ordered, that respondent shall, upon so modifying, direct that an appropriate panel conduct a rehearing of petitioner’s application, in accordance with applicable statutes and regulations, at which time petitioner shall (if she so requests) be provided with either a Creole interpreter or a French interpreter according to her preference; and that it is further
Ordered, that the contents of the transcript of petitioner’s March 24, 1992 parole-release hearing, from page 5, line 7 through and including page 10, and the entire recommendation of the parole panel that conducted that hearing, be expunged from respondent’s files, and that those respective comments and recommendation not be utilized in connection with any future investigation, assessment or review, by respondent, his successors, or any of their designees, regarding the appropriateness of Christa Labbe’s release from (or return to) incarceration.

 Parole revocation hearings are subject to limited due process analysis. (Morrissey v Brewer, 408 US 471 [1972].) Thus, confronted with an allegation of faulty interpreter services at a revocation hearing, the court in Rivera v Jeffes (43 Pa Commw 316, 319, 402 A2d 316, 318 [1979]) refused to restore petitioner to parole because he presented no "objection that would indicate that the interpretive services were so inadequate as to amount to a denial of due process.” Further, if inmates who require interpreters were entirely excluded from the parole-release scheme, the court would be confronted with an issue similar to that presented in United States ex rel. Gabor v Myers (237 F Supp 852 [ED Pa 1965] [complete denial of inmate’s right to send and receive mail, predicated solely on the ground that inmate and his only known relative corresponded in Hungarian, held unconstitutional: new policy that incoming and outgoing mail be forwarded following translation not ruled upon]).